

FILED
05/16/2017
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 11, 2017

**STATE OF TENNESSEE v. EDDIE H. PITTMAN**

**Appeal from the Circuit Court for Madison County**
**No. 15-58     Kyle Atkins, Judge**

———————————————————

**No. W2016-00745-CCA-R3-CD**

———————————————————

A Madison County jury found Eddie H. Pittman, the defendant, guilty of reckless endangerment with a deadly weapon, aggravated criminal trespass, and reckless aggravated assault.  The trial court merged the reckless endangerment with a deadly weapon conviction with the reckless aggravated assault conviction and imposed an effective sentence of twelve years, eleven months, and twenty-nine days.  On appeal, the defendant challenges the sufficiency of the evidence to sustain his convictions and argues the trial court erred when imposing consecutive sentences.  Following our review of the record and the pertinent authorities, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Joshua B. Dougan, Jackson, Tennessee, for the appellant, Eddie H. Pittman.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Jerry Woodall, District Attorney General; and Nina Seiler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

This matter arises as the result of a physical altercation between the defendant and Rodricus Morris, the victim, occurring early the morning of March 7, 2014.  At the time, the victim resided on Simms Street, Jackson, Tennessee, in a room he rented from Mr.

Donald Pirtle. Mr. Pirtle also resided there, as did Mr. Pirtle's niece, Benita Odom, who rented another room in the house. Ms. Odom had a romantic relationship with the defendant, and he spent the night in her room on occasion. Simon Beard, Mr. Pirtle's caregiver, occasionally spent the night in Ms. Odom's room. The victim was admittedly a crack cocaine dealer and had previously sold drugs to Ms. Odom, Mr. Pirtle, and the defendant. The victim testified at trial that the defendant owed him $10.00 from a prior drug transaction, but he had not attempted to collect the debt.

According to the victim's trial testimony, the evening of March 6, 2014, he drank half a pint of vodka, smoked marijuana, consumed two small rocks of crack cocaine, and went to bed around 10:00 p.m. Around 2:30 a.m., the defendant broke into the victim's room uninvited and woke him. The victim recognized the defendant by sight because he had given him rides in the past and sold crack cocaine to him. The defendant reached into his back pocket, and the victim thought he had a gun. The victim ran to the defendant, attempting to grab whatever was in his hand. The victim and the defendant began "tussling," and the defendant cut the victim on his right arm and across his chest with a sharp object. The victim identified the defendant as the aggressor. After the attack, the defendant disappeared, and the victim left the room to seek help. He first went across the street and knocked on a neighbor's door but did not receive an answer. He then walked to the back of the house and down an alley to a home located on Wilkinson Street. The resident called 911, and emergency responders came to the scene. While the resident on Wilkinson Street called for help, the victim returned to his house and hid a bag containing 26.3 grams of crack cocaine under a shed in the backyard. The victim never resided in the room again. After being released from the hospital, he returned to get his belongings and noted his cellular phone and iPad were missing.

In a statement rendered by the defendant to the Jackson Police Department and entered into evidence at trial, the defendant offered this differing account of the incident:

> On Thursday night about 11[:]30 [PM] I talked with [the victim] about him saying I owed him money. I bought dope from [the victim] three days in a row and I had paid him for the drugs. I bought more drugs from [the victim] at 11[:]30 [PM] and paid him for the drugs. He said I owed him $50.00 for drugs I bought the previous days. We argued about the money and I went back to Benita's side of the house and got high. About 1[:]00 AM he knocked on his door and said come here a minute. I went over to his room and [the victim] said he wanted his money. I told him I don't owe you any money and he said yeah, you owe me the money. I started to walk off and he grabbed me by the collar of my shirt, pushed me against the wall and was screaming at me. I started fighting back and hit him in the side of the face. We got separated and he ran out of the house, out the backdoor.

Seconds later he came back in the front door and he ran at me. I saw something shiny in his hand. He had the shiny object at head level and I grabbed the hand with the object, [the victim's] wrist with both hands and held the object away from me. We fought and tussled until I got my body between the knife and [the victim] while holding [the victim's] wrist. We fought more and went to the floor where we wrestled and rolling around with the knife. We got back up and I still have his wrist and we pulled loose after he said I'm through with it, let me up, I'm cut. You cut me bad! I told him you cut yourself. [The victim] said I'm gonna get you! [The victim] ran out the front door. I looked to see if I was cut and wasn't so I went out the front door to leave toward Lane Avenue. I saw [the victim] when I was leaving. He was in the front yard of a house on Wilkinson. The house is white and is behind Benita's house but faces Wilkinson. [The victim] was yelling at Simon who was going to his truck. [The victim] was saying "you could have stopped this!" I'm not sure if he was yelling at me or Simon. Simon was there checking on Donald Pirtle.

Following the attack and request for emergency assistance, Officer Jay Mullikin with the Jackson Police Department was dispatched to the scene around 2:50 a.m. He brought a trainee with him to take photographs. Additional officers responded, including Officer Jonathan McCrury and Sergeant Brian Spencer. The officers photographed a blood trail leading from the victim's room, across the street, down the alley, and to the front door of the house on Wilkinson Street. They also photographed a trail of blood leading to the shed, where they found the bag of crack cocaine, and recovered a bloody belt outside the home. Once officers were able to speak with the victim and assured him they were interested in pursuing the violent crime and not drug charges, he admitted to hiding the narcotics under the shed.

The officers noted the victim's room was spattered in blood. There were two ways to enter the victim's room – one interior door and one exterior door leading to the front of the house. The lock on the exterior door had been broken, and photographs of the broken lock were exhibited at trial. Sergeant Spencer took statements at the scene from Benita Odom and Simon Beard. Sergeant Spencer additionally tried to speak with the victim, who had been taken to the hospital and was in and out of consciousness. The victim indicated the defendant attacked him. The officers recovered a box cutter from Ms. Odom's room that they suspected had been used during the attack. Subsequent forensic tests, however, did not reveal latent fingerprints or the presence of blood. The parties entered a stipulation of these findings into evidence at trial.

An ambulance arrived at the scene to take the victim to Jackson-Madison County General Hospital. The victim testified at trial that from the ambulance, he witnessed the

defendant's leaving with Simon Beard, Mr. Pirtle's caregiver. Once he arrived at the hospital, the victim's wounds were superficially treated in the emergency room. He was then moved to the operating room, where Dr. John Sparrow performed surgery to repair the victim's ulnar artery, ulnar nerve, tendon, and muscle tendon. Dr. Sparrow additionally reopened the victim's chest wall to repair muscles and soft tissues.

Dr. Sparrow confirmed the victim sustained serious bodily injuries, meaning "bodily injury that includes substantial risk of death." According to Dr. Sparrow, had the victim not received aid, it is possible he would have continued to bleed and eventually died. Dr. Sparrow opined the lacerations were inflicted with a razor-sharp blade, such as a pocket knife, paring knife, box blade, or X-ACTO knife. When questioned regarding the defendant's version of the events, Dr. Sparrow testified that if another individual had been holding the victim's wrists at the time of the injury, then that individual would also have been injured. According to Dr. Sparrow, the victim was right-handed, and he suffered lacerations over his left chest wall and right forearm. Because he was right-handed, it is "very, very unlikely" the wounds were self-inflicted, particularly the right forearm laceration. Likewise, the lacerations were not the result of the victim's falling on a knife.

When questioned regarding his interactions with the victim, Dr. Sparrow testified the victim told him an intruder broke into his home while he was sleeping and assaulted him. The victim did not go into detail, but Dr. Sparrow believed he was telling the truth, and his injuries were consistent with his story. A drug screening conducted while the victim was hospitalized came back positive for cocaine, opiates, and benzodiazepines. The positive opiate and benzodiazepine screenings were likely the result of medications given in the emergency room, but the defendant would not have received cocaine or a medication derived from cocaine in the emergency room.

After calling Sergeant Spencer, Officer Mullikin, Officer McCrury, Dr. Sparrow, and the victim to testify, the State rested. The defendant declined to testify but called Simon Beard and Benita Odom as witnesses. Mr. Beard testified that he is Mr. Pirtle's medical caregiver and occasionally spends the night in the home on a couch in Ms. Odom's room. He was spending the night on March 6, 2014, and woke up to the sound of fighting in the victim's room. He checked on Mr. Pirtle to ensure he was okay. Mr. Pirtle was asleep, so Mr. Beard decided to leave and return to his house nearby. As he was getting into his truck to leave, the victim saw him and said, "You could have stopped this!" He did not see blood and did not realize the victim had been hurt. He saw the defendant walking down the street but did not see anything in his hands, speak with him, or give him a ride. A short time later, Mr. Pirtle's sister contacted Mr. Beard and indicated the victim had been injured. Mr. Beard returned to the residence to speak with

the police. Mr. Beard admitted having prior convictions for counterfeiting and theft of utility services.

Ms. Odom testified that she and the defendant worked together at a Toyota dealership and had a romantic relationship. Both she and the defendant worked the evening of March 6, 2014. Ms. Odom returned home after work but left again at 2:00 a.m. to go to a friend's house. The defendant, the victim, Mr. Beard, and Mr. Pirtle were all at the house that night, but Mr. Beard and the defendant left at some point to go to the store. When Ms. Odom left for her friend's house, the defendant was still at the store. She returned home between 3:30 a.m. and 4:00 a.m. after learning there had been a fight.

After the close of all proof, closing arguments, and being charged, the jury found the defendant guilty of reckless endangerment with a deadly weapon, aggravated criminal trespass, and reckless aggravated assault. The trial court merged the reckless endangerment with a deadly weapon conviction with the reckless aggravated assault conviction and, following a sentencing hearing, imposed consecutive sentences of eleven months and twenty-nine days for the aggravated criminal trespass conviction and twelve years on the merged reckless aggravated assault and reckless endangerment with a deadly weapon convictions. The transcript from the sentencing hearing was not included with the record on appeal.

The defendant subsequently filed a motion for a new trial challenging his sentence only. The trial court denied this motion finding, in part, that the consecutive sentences were proper because it found the defendant to "be a professional criminal under T.C.A. [§]40-35-115, as reflected in the multitude of his prior felony convictions presented during his Sentencing Hearing." This timely appeal followed.

*Analysis*

On appeal, the defendant challenges the sufficiency of the evidence to sustain his convictions and argues the trial court erred when imposing consecutive sentences. The State contends the evidence was sufficient, and the defendant waived his sentencing argument by failing to include the transcript from the sentencing hearing with the record on appeal. Moreover, based on the defendant's criminal history, the trial court properly found him to be a professional criminal and imposed a consecutive sentence. Following our review of the record and the pertinent authorities, we agree with the State and affirm the judgments of the trial court.

I.      **Sufficiency of Evidence**

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the

circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id*.

### A.     Reckless Endangerment with a Deadly Weapon

A person "who recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury" commits reckless endangerment. Tenn. Code Ann. § 39-13-103(a). If committed with a deadly weapon, reckless endangerment is a Class E felony. Tenn. Code Ann. § 39-13-103(b)(2). The defendant asserts the evidence presented at trial was insufficient to support his reckless endangerment conviction because the only proof the defendant used a weapon came from the victim, who was admittedly under the influence of drugs and alcohol at the time of the attack. Moreover, forensic testing revealed the box cutter recovered from Mrs. Odom's room did not contain any blood or fingerprints. The State contends the defendant challenges the credibility of the victim, and the trial court and the jury are in the best position to evaluate the credibility of witnesses. We agree with the State.

Here, the victim testified that he woke up to the defendant breaking into his room. The defendant was reaching into his back pocket, so the victim thought he had a gun. He ran to the defendant, tried to grab whatever was in the defendant's hand, and the defendant cut him. The victim and the defendant began wrestling, and the defendant cut the victim again. The victim denied having a weapon himself and indicated the defendant was the aggressor in the altercation. Once at the scene, the police recovered a box cutter. However, the parties entered a stipulation at trial indicating forensic tests revealed the box cutter did not have any fingerprints or traces of blood on it. Dr. Sparrow testified that the lacerations to the victim's arm and chest were caused by a razor sharp blade, like one found on a pocket knife, paring knife, box blade, or X-ACTO knife. Dr. Sparrow further agreed the lacerations qualified as serious bodily injuries, because had the victim not received medical attention, he could have lost enough blood to result in his death. The parties did not present any proof at trial indicating the victim received additional lacerations between his early morning altercation with the defendant on March 7, 2014, and the subsequent surgery performed by Dr. Sparrow.

Considering this evidence in the light most favorable to the State, the State presented sufficient evidence at trial to support the defendant's conviction for reckless endangerment with a deadly weapon. Through its guilty verdict, the jury accredited both the victim's testimony regarding being cut by the defendant, and Dr. Sparrow's testimony that the victim's lacerations were caused by a razor-sharp blade. Any credibility

questions raised by the victim's insobriety were within the province of the jury, and we will not reevaluate the credibility of the victim on appeal. The defendant is not entitled to relief on this issue.

## B.     Aggravated Criminal Trespass

With respect to the defendant's conviction for aggravated criminal trespass, Tennessee Code Annotated section 39-14-406 provides:

(a) A person commits aggravated criminal trespass who enters or remains on property when:

 (1) The person knows the person does not have the property owner's effective consent to do so; and

(2) The person intends, knows, or is reckless about whether such person's presence will cause fear for the safety of another; or

(3) The person, in order to gain entry to the property, destroys, cuts, vandalizes, alters or removes a gate, signage, fencing, lock, chain or other barrier designed to keep trespassers from entering the property.

For the purpose of the statute, "enter" means "intrusion of the entire body." Tenn. Code Ann. § 39-14-406(b).

In the present matter, the defendant argues the State failed to prove the defendant entered the victim's property. The defendant again asserts the only proof the defendant entered the victim's room came from the victim himself, and the victim was not a credible witness due to his intoxication at the time of the altercation. The defendant further argues the victim had an incentive to be dishonest because the State never charged him for possession or concealment of the crack cocaine found under the shed. The State again argues these are credibility issues to be resolved by the trier of fact, not this Court. Again, we agree with the State.

The victim testified the defendant broke into his room, and police officers subsequently photographed a broken lock on the exterior door leading into the victim's room. Questions concerning witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Again, through its finding of guilt, the jury accredited the testimony of the victim, and we will not reweigh his credibility on appeal. The defendant is also not entitled to relief on this issue.

### C.    Reckless Aggravated Assault

The defendant additionally challenges the sufficiency of the evidence to sustain his conviction for reckless aggravated assault.  A person commits reckless aggravated assault when he or she "[r]ecklessly commits an assault as defined in § 39-13-101(a)(1), and the assault: (i) [r]esults in serious bodily injury to another; or . . . (iii) [i]nvolved the use or display of a deadly weapon."  Tenn. Code Ann. § 39-13-102(a)(1)(B).  Assault occurs when a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another."  Tenn. Code Ann. § 39-13-101(a)(1).  The defendant argues the evidence at trial did not support his reckless aggravated assault conviction because the only evidence regarding the defendant's use of a weapon came from the victim himself, and the victim's injuries did not constitute serious bodily injuries.  The State contends the evidence was sufficient because Dr. Sparrow testified that both lacerations posed a substantial risk of death if not treated.  We agree with the State.

Again, the victim offered extensive testimony at trial regarding being cut by the defendant.  The jury accredited this testimony.  Any questions regarding his credibility were within the province of the jury, and we will not reweigh the evidence on appeal.  Moreover, the defendant does not point to any evidence supporting his argument the victim did not sustain a serious bodily injury.  Instead, Dr. Sparrow testified that the victim's injuries were extensive and required surgery.  Without treatment, the victim would have likely died.  When viewing the evidence in the light most favorable to the State, the evidence was sufficient to sustain the defendant's conviction for reckless aggravated assault.  The defendant is not entitled to relief on this issue, either.

## II.    Sentencing

Finally, the defendant asserts the trial court erred when imposing consecutive sentences.  The defendant, however, failed to include the transcript from the sentencing hearing with the record on appeal, so the State contends the defendant waived the issue.  Alternatively, the State contends the information regarding the defendant's criminal history included with the appellate record reveals an extensive criminal history, so the trial court properly ordered consecutive sentences.  We agree with the State.

"The standard of appellate review for consecutive sentencing is abuse of discretion accompanied by a presumption of reasonableness."  *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013).  This presumption of reasonableness only applies when the trial court has provided reasons on the record establishing at least one of the seven statutory bases for imposing consecutive sentences.  Tenn. Code Ann. § 40-35-115(b).  The trial court may properly impose a consecutive sentence after finding just one of the factors applicable.  *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013).  The reasons for

imposing consecutive sentences include:  "[t]he defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;" and "[t]he defendant is an offender whose record of criminal activity is extensive[.]"

As the appellant, it was the defendant's duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b).  If this Court is unable to fully review an issue based on the defendant's failure to include a full transcript, the issue has been waived.  *See State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998) (failure to include trial transcript on appeal resulted in waiver of sentence challenge).  Here, the defendant has not included the transcript from the sentencing hearing with the record, so we are unable to determine whether the trial court properly provided reasons on the record for imposing consecutive sentences.  The defendant has, therefore, waived his challenge of the trial court's imposition of consecutive sentences.

Regardless, based on the information contained in the record, the trial court properly imposed consecutive sentences.  The defendant's pre-sentence report, which is included in the record, lists criminal convictions beginning in 1977, when the defendant was 19, and ending in 2008, when the defendant was 51.  The report includes seven convictions for theft of property up to $500, six convictions for shoplifting, five convictions for possession of cocaine, five convictions for petit larceny, two convictions for criminal impersonation, two convictions for grand larceny, two convictions for possession of stolen property, one conviction for possession of a weapon by a convicted felon, one conviction for simple assault, one conviction for felony shoplifting, one conviction for receipt of stolen property, one conviction for counterfeit controlled substance, one conviction for obtaining drugs by fraud, one conviction for attempt to commit a felony – escape, one conviction for forgery, and one conviction for attempted second degree murder.  Additionally, on the judgment sheet for the defendant's reckless aggravated assault conviction, his offender status is marked as "career," and in its order denying the defendant's motion for a new trial, the trial court indicated the consecutive sentences were ordered because it found the defendant to "be a professional criminal under T.C.A. 40-35-115, as reflected in the multitude of his prior felony convictions presented during his Sentencing Hearing."  The trial court did not abuse its discretion when imposing consecutive sentences.  The defendant is not entitled to relief on this issue.

### Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE